Mr. Jacobs. Thank you. Good morning, Your Honors, and may it please the Court. My name is Andrew Jacobs, and I represent the appellant in this action, Gary Crookshank, as trustee of the Environmental Careers Organization, Incorporated. Your Honors, before I begin, may I request one of my few minutes as rebuttal at the end? Yes, you may. Thank you. As the Court is aware, this is a negligence case brought by a bankrupt company against its longtime CEO, Jeff Cook, after a government investigation revealed that the company had wholly failed to comply with the express terms of government contracts it had, which accounted for the vast majority of its revenue. Let me ask you something. If this company hadn't gone into bankruptcy, was there an administrative procedure by which it could have contested the EPA's audit finding? Yes, and thank you, Judge Lange. There is, under Chapter 40 of the CFR, there was a review procedure under which the EPA challenged the claim and ECO had the right to come back and contest it. But that didn't happen because the company went into bankruptcy? That's correct. There was a final attestation report that was done by the EPA. It recommended that ECO was not in compliance with its government contracts. The CFR allows companies that have failed to comply with program requirements for the monies to be drawn back. They were our creditor in the bankruptcy claim. We are the trustee. We've pursued an adversary action against the CEO for negligence, and we're derivatively pursuing their claim. Yes, so in a way you're in the shoes of the EPA here? In some ways. I think in some ways it matters, in some ways it doesn't. It's interesting, for instance, it wasn't at issue here, but for instance in some of the case law party admissions that were made by the company wouldn't apply to us. There are ways in which it's different. I don't think it makes a difference here. So whether the EPA gets any money and whether the trustee gets any money depends on this lawsuit? It does. There were three entities that had contracts with ECO. That was the vast majority of its revenue. It was NOAA, it was the EPA, and there was one other agency. Out of all of those, I think it totaled $18 million. There was a $6 million claim by the EPA. They put in a claim. We felt it was our strongest case. We made the decision to go forward with that claim. The monies that we recover, we would like to enlarge the assets of the estate. That's what we do in adversary proceedings that would be divided among the creditors. Okay. Thank you. The issue in this appeal is not whether an expert on the standard of care should have been permitted, but whether one was expressly necessary because it was an essential element of the plaintiff's claim. That's precisely what the district court found. The order appealed from held that without, quote, expert evidence regarding the standard of care as a matter of law, the plaintiff cannot satisfy his burden of proof on his claim. Let me try to move this along. I don't understand the district court to have been thinking in terms of, say, attorney malpractice or doctor malpractice, the usual rule about professionals. I viewed the district court as having operated under the other aspect of the expert witness, that in this case, it would have been helpful, even required, for a jury to be able to understand this complex of issues of government regulation on top of fiduciary duties. So can we focus your argument on the latter? Sure, of course, and I think that that's a great point. I think that we have to start with the district court's ruling because it did rule that we needed a standard of care precisely because we were suing the CEO. It said that unless, this is a quote from the order, unless the members of the jury have all had experience in a like position with respect to a similar corporation, they will need to have evidence from someone with that situation. Okay, but I do understand that to be a case-specific ruling as opposed to being a CEO of a not-for-profit always calls for. Are we agreed? Well, I think I was struggling as well. I think the parties were in their briefing with what exactly the district court order meant, and I think that whatever issue that we look at, whether it's you say that there's an underlying accounting issue, whether there's potential issues of causation in the district court issue, shouldn't be read to be about a standard of care, whatever issue there is, I think that we can fill it in with testimony from fact witnesses with the showing of gross negligence, which of course would be an exception anytime that there's an expert requirement, or in other ways, the jurors are reasonable people and they could take the facts and they can go with them. Of course, certainly, I think one of the main things that your question raised was whether or not ECO was complying with the contracts or not, and I think that in that regard, it's the court's role to say what a contract says and to interpret a contract, and it's also the court's role to give a comprehensive jury instruction on the law. If the issue was, I think in this case, the appellee, Mr. Cook, said, well, it was really hard to determine what these contracts required, I think that we have great evidence of gross negligence or even that his mistakes were intentional and his instructions were intentional, but I don't think that you need to go there. I think that we have a very strong case and I think that any portion of it could have come in through an expert. We had some great cases on that. We had, for instance, the McGillivray v. Dana Bartlett case, which says that where you have conduct that violates the terms of a statute, that was an expert case, but you didn't need an expert because it was almost a per se matter of malpractice. I've just been trying to figure out how you would have presented this case. Who would have put in the evidence of these contracts and that there was some violation? Some of the employees? Is that how you intended to do it? That was precisely how we intended to do it. So we had three... And they would have no particular expertise or did they? Some of them would. So the CFOs, and actually I think this goes to Chief Lynch's question, so this isn't an accounting issue because the CFOs didn't have particular experience with accounting. Ernie Greppin, who was one of the CFOs, was a CPA, but his license had lapsed. Bruce Hain was the second CFO, and I don't think there's anywhere on the record that he had accounting experience. And Carolyn Weyneth had only taken a basic accounting course. Could any of those people have been qualified to talk about or testify about the meaning of the contract? Or was it your intention just to say, the contract said X, and you the jury have to figure out what that means? Well, the contract did say X, but I think that the contract was very explicit as to what it required. So it said that on the terms of the contract, and I could point the court to where exactly this is, the contracts themselves, this is at page 104 of the appendix, Mr. Cook signed the actual agreement applications. He gave assurances that the applicant, quote, will comply with all applicable requirements of the laws, executive orders, regulations, and policies of this program. Most importantly, that application stated to the EPA that, quote, payment shall be made on a cost reimbursement contracts, meaning in other words, these were not fixed contracts, they were provisional rates. The agreement stated that it was subject to applicable U.S. Environmental Protection Agency statutory provisions and assistance regulations, including the OMB. The OMB circular has three requirements. It says that the charges that ECO submits have to be reasonable, they have to be documented, and you have to spend whatever you spend or you have to give it back. How do you determine the charges are reasonable? What sort of evidentiary standard would you use without an expert to say these are unreasonable charges? Well, we did actually, there was one other person, and I think that this goes to your question, there was one other person who is uniquely qualified, and that was Rich Valliere, who was an auditor from the EPA. And he was the one who actually conducted the investigation, and he came in, and there were very simple ways in which ECO failed to comply with the contracts. For instance, one of the requirements I mentioned was that costs had to be documented. So he went in and he said, show me the receipts, and they didn't have receipts, and so he said that those costs were unsupported. I think that Mr. Valliere's testimony is admissible under the Beach Aircraft case, that's the U.S. Supreme Court case from 1988, which had several requirements for when a layperson, not a layperson, but somewhere between a layperson and an expert can be admitted. It was also at issue in the Downey decision, which I think I'm going to get in trouble if I... We can refer to your briefs for that. I'd like to ask Justice Souter if he has any questions at this point. Thank you. No, I do not. All right. Thank you. Thank you. Good morning. May it please the Court, my name is Sarah Kolb. With me is Barry Klickstein. We represent the defendant, Mr. Jeff Cook. There are at least two distinct reasons to defend the District Court's decision granting Mr. Cook judgment as a matter of law. Namely, after over six years that this case has been pending, plaintiff has no possibility of proving at least two elements of his claim, and those are standard of care and damages. As to the first, standard of care, which was the basis for the District Court's decision, there is a Massachusetts statute that governs here. It holds Mr. Cook as the officer of a non-profit to the standard of reasonable care that would be exercised by a typical person in his position in a similar corporation under similar circumstances. Plaintiff's allegations generally are that Mr. Cook breached his fiduciary duty of care by negligently allowing the organization to account for certain rates in its government contracts as fixed rather than provisional, and failing to adopt appropriate accounting procedures. Mr. Counsel, let me summarize my concerns. I doubt very much that we want to create a precedent that says you need, under this statute, in every case to have an expert witness. That would seem to go against the main trend of state law. But on the particular facts of a case that involved complicated accounting issues and differences in views about the meaning of government standards, I could see that an expert could be very helpful to a jury. But the District Court's reasoning is a little bit hard to follow here. That he would have found it helpful to the jury here, does that mean as a matter of law the witness is required? That's a very good question. I don't think that the District Court was announcing a new law here. I don't think it's the case that you necessarily always need an expert to prove negligence on the part of a corporate officer or director. For example, in cases of self-dealing, which are frequently the case when you see cases against corporate officers, the burden then shifts and it becomes the defendant's burden to show that he met the standard of Here, I think when you look to the allegations, they are so clearly involved, so many issues that fall outside the ken of the average juror's common knowledge. The District Court pointed out this is not like a case of automobile negligence where the average person can look to their experience and say, under this set of circumstances, due care would require me to drive slower or whatever. Without a jury of CEOs, the jury is not going to be able to understand what was Mr. Cook entitled to rely on? Was he entitled to make a decision on this matter based on what he believed the contracts to mean? And I would just like to point out that the facts, I think even if the facts were what plaintiff states, that we would still prevail here, but they're actually not. What the record shows is that there was a disagreement and confusion about how to handle these rates. It boggles my mind to try to figure out how, if different CFOs who have experience in government contracting and have experience with these matters generally can't reach a single conclusion about what their meaning was, that plaintiff is going to proceed, toss 70 exhibits at the jury and expect them to make heads or tails of it. It may be extremely helpful to the jury to have an expert witness. But there is a bit of a problem here. There was no prior notice to the trustee that this requirement had to be met. They show up. They happen to think, well, it may be helpful, but we don't want to spend the money on it. And then they go into the pretrial conference and all of a sudden their case is tossed out because they haven't met a requirement. No one told them they had to meet. So what do we do? In response to that, I would say I think the case law is actually quite clear, whether or not this falls into a category of professional negligence that a plaintiff can assume. Wait a minute. One of the questions I asked your brother was what some of these other people could testify to. And many of them seem, from what he says, they have some expertise in this area. Now, there might be differences of opinion and you would have people who say, this isn't correct. And I do know that you had an independent expert come in and review what you were doing and so forth. But aren't those just typical patents that his people could have testified to, what their view was of this? Sure. Well, if they could have testified to, even if we assume they could have testified to that, the defendant would have been entitled to the automatic disclosures and to an expert report so he could prepare a defense to those issues. It was notice to the plaintiff I was concerned about, not notice to the defendant. Well, I would say in response to that, that plaintiff did have sufficient notice in that the line of cases is quite clear that where issues take a jerk, where a plaintiff needs to take a jerk outside of the commonplace issues that they can look to their own experience and knowledge to assess, you need expert testimony. And that is fundamental Massachusetts state law. It arises in different contexts, but I have a hard time understanding how a plaintiff could have proceeded here thinking that his case was not such a case. The issues are quite clearly very complex and it seems to me he needs an expert on multiple issues, the underlying accounting, the government contracting, the standard of care. Which brings me to our second point as a separate basis to affirm the district court's decision is damages. An essential element of plaintiff's claim is damages and he has not disclosed his damages. He never disclosed them. As late as the final pretrial conference, plaintiff indicated to the court that he had not computed his damages, he would not be in a position to compute his damages, and in fact would be looking to the court to instruct the jury on what the damages were. I'm not aware of any basis for a plaintiff to proceed to trial with no evidence of damages and expect the court and the jury to work it out amongst themselves. What about his theory he's standing in the shoes of the EPA which wants its $6 million? Well, leaving aside the fact that the $6 million is simply a claim that the EPA made in bankruptcy, it doesn't represent damages and no coherent theory of how that would represent damages TCEO was ever presented, he simply did not meet the Rule 26 requirements of disclosure. If you look at plaintiff's disclosures, it says only he has not calculated his damages in full and reserves the right to do so in the future. There's reference to a $6 million figure but it's not stated as these are our damages and here's how we got there. And he had a duty to supplement that and never did so. And I would point out, contrary to the statement in plaintiff's reply brief, that the district court rejected this argument. Quite the contrary, the district court said, you haven't made it to step one on standard of care. So I don't need to reach this issue of damages and it's mooted. That's not the same to my mind as rejecting the argument. So I think on that basis as well. We can agree with you, but if you're offering it as an alternative ground, which hasn't been ruled on by the district court and isn't self-evident, then normally we would remand to the district court to consider that argument. Well, I would point out that plaintiff, this issue did come up in the final pretrial conference. Judge O'Toole told the parties essentially file anything you want on these issues in particular, but anything else you want. And plaintiff never made any showing that this was substantially justified, that he had failed to make his disclosures or that it was harmless to the defendant and it's quite clearly not harmless. So I don't really think he's preserved that as an issue that should go back to the district court. In any case, I would point to the First Circuit's clear ruling that the failure to disclose under Rule 26 results in a near automatic preclusion. So without evidence of damages, I don't see how plaintiff can proceed at trial. Okay, we'll ask Justice Souter if he has a question for you. I think just one thing I want to be clear on, your position about the sort of need as a matter of law for an expert witness here. Do you take the position that Massachusetts law is as clear in requiring expert witness here as it would be in the classic professional negligence cases like law and medicine? Well, I think we don't have the advantage of this clear cut category where you almost automatically need an expert. But as is clear from the case law in those professional negligence cases, the court's always still taking a look because you have this carve out, well, sure, typically you need an expert for legal malpractice, but when the negligence is so gross or obvious to be within the common knowledge of the juror, you don't need it. So the fact of that carve out shows you're still taking a look. And here, I think it is as clear in the sense that, as Justice Lynch referenced, this other line of cases where an expert is required, it's not just in standard categories of professional negligence, it's where the substantive issues are beyond a juror's common knowledge. And I think quite clearly, just based on the pleadings, you can see that that applies here. But don't you agree that, in fact, this is a matter for the informed discretion of the judge? I do in the sense that the judge was looking at all of the facts, the best facts plaintiffs could put before him and still determined that this involved issues that were too complex for a juror to figure out on their own. But if the judge is making a discretionary decision, shouldn't the party against whom it would run have an opportunity to address or at least have some warning that a discretionary decision is about to be made? Well, I think the rule of law is quite clear, and he certainly had notice of that. And as I said, Judge O'Toole provided the plaintiff an opportunity to put in his best evidence and make his best case. And Judge O'Toole assumed that all of those facts were true and still found that an expert would be required. When did you first make the argument that an expert was required? Well, we waited to raise this. We always expected that plaintiff was going to designate an expert, and there were certainly conversations about that. But we waited until the very, very last deadline, which is under the local rules for the District of Massachusetts, 90 days before the final pre-trial conference plaintiff has. That's a final deadline for designating an expert. And at that point, we raised, in our mean-confirmed, we raised in our pre-trial submission that this was a major problem in the case. So he certainly had that extent of notice and then had multiple opportunities to submit briefing on the issue. What opportunity did he have to respond to you when you raised it? When we raised it for the first time? You raised it at the 90-day point. What opportunity did he have to respond to that? Two rounds of briefing, and with the final pre-trial conference falling in between. So from your point of view, you raised the issue 90 days before and said they need an expert. They haven't designated an expert yet. They had a chance then to find an expert or to argue to the district court that they didn't need an expert. Right. Well, presumably they had assessed their case and determined that they didn't need one. And I would point out that with respect to the disclosures, it's not defendant's burden to keep advising plaintiff of what his obligations are to make his case. We responded to the evidence that was presented. Any further questions? Not for me, thank you. I'm sorry, Justice Souter. I couldn't hear you. Oh, I'm sorry. No, I have nothing further. Thank you both. Thank you. We have a minute of rebuttal left. Thank you, Your Honors, and I'll be very brief. The first thing I do want to point out is that we did argue that we had the EPA investigator, Rich Valliere. I would suggest to the court that under its Downey decision, and I'm going to get in trouble if I don't say that Judge Stahl was on that panel four years ago, that you can look to when an investigator can come in and testify to these facts. It's the same way that arresting officers can testify that they knew that somebody was in a gang or that their crack cocaine was in fact crack cocaine. It's the beach aircraft case. I agree with the panel that the main trend is that there is a categorical distinction between professional and non-professional cases, and I agree with the panel that there would essentially be no limiting principle. It's a reasonable person standard. It's under like circumstances, and I think it would be very difficult from this point forward for any plaintiff in a garden variety claim to know when he must present an expert and when he must not. In this case, there were very good reasons why neither party designated an expert on any topic in this case, and from the trustee's perspective, it's because we wanted to enlarge the estate's assets and maximize the recovery to creditors and to do that in a very efficient way. Thank you. Thank you. Justice Souter? Well, I guess I just have one question. After the 90-day pretrial statement was filed, did you have an opportunity to reconsider your position as to whether to present an expert? Yes. Well, I don't think that there's a formal procedure that we can ask for. I think that there are limitations on when we had to designate someone. Certainly when the issue came up, we did ask the district court to designate Richard Valliere as an expert because he is. He's a senior investigator with the EPA, and he goes in all the time, and he can tell what charges were supported or unsupported and allowable or unallowable, but we did argue that we didn't need an expert on any issue. It's a reasonable person standard. The court can say what the contracts mean. The court can say what the law would mean, and I think it would be error. And actually, I would like to point the court to the Hartman case, which was the Colorado case, which has a very similar statute. It says a director in a like position. In that case, not only would not be required, but an expert would not be helpful to a jury. It excluded it. The Colorado Court of Appeals affirmed that decision, and review was denied by the Colorado Supreme Court. Very similar statute. Same with the Marquez case out of Oregon. If I may ask a follow-up question. You did ask the district court to, you said we're going to use Richard Valliere, and we ask that you designate him as an expert. So this dispute is about whether an additional expert would be required? Well, I think the case is about whether any expert would be required, and if an expert is required, I don't think that we had adequate notice of it. Certainly, the law as it stood at the time, there was no fiduciary case. There was no corporate officer case anywhere in the country, as far as anyone's been able to tell, where you needed an expert on the standard of care. But if the court did want to make a new change in law, and again, I don't think it should have rocked the boat, because it's a federal court construing state law claims and no special deference. But had it, I think that we would have liked the notice, and we did ask to designate Richard Valliere. We would have liked the chance to designate another expert if need be. There's no reason why the trial couldn't have been set off like it already had been once. What happened when you sought to designate Valliere as an expert? It was in our briefing, and it wasn't ruled on by the court. We weren't in a position, we were under the assumption that we were going to trial. And so, we had filed that day, I think, our proposed juror instructions. So, we had it in our briefing. We didn't have an additional chance to argue to the district court, but it certainly wasn't found in the district court's decision, which is in the addendum to our briefs. All right. We will give your opponent a chance to reply. Thank you. Thank you. I just wanted to point out that I'm not aware of that ever happening, that plaintiff requested to designate Mr. Valliere as their expert. All right. Well, you, too, will be under the obligation to file Rule 28J letter both sides with the court within one week, which identifies either in the record such a request or the absence of such a request. Thank you. Any further questions from the court? Not from me. Thank you. None. Thank you.